UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

RECEIPT #_____
AMOUNT $ 150.00
SUMMONS ISSUED ✗-4
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 4-13-04

| | |
|---|---|
| MASSACHUSETTS SOBER HOUSING CORPORATION,<br>    Plaintiff<br><br>v.<br><br>CITY OF CHELSEA, JAY ASH, in his capacity as City Manager of the City of Chelsea, JOSEPH COONEY, in his capacity as Director of the Department of Inspectional Services of the City of Chelsea, and JOSEPH SIEWKO, in his capacity as Fire Chief of the City of Chelsea,<br>    Defendants | Civil Action No.<br><br>04 CV 10753 JLT<br><br>MAGISTRATE JUDGE _____ |

### VERIFIED COMPLAINT

Plaintiff, Massachusetts Sober Housing Corporation ("MSHC), files this Complaint against defendants City of Chelsea ("City"), City Manager Jay Ash, Director of the Department of Inspectional Services Joseph Cooney, and Fire Chief Joseph Siewko. Upon knowledge with respect to itself and its own acts, and upon information and belief with respect to all other persons and matters, MSHC alleges as follows:

## PRELIMINARY STATEMENT

This matter arises pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq*; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; The Rehabilitation Act, 29 U.S.C. § 794, *et seq.*; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Massachusetts Zoning Act, M.G.L. c. 40A, § 3; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Fourteenth Amendment of the United States Constitution; and Article 10 of the Declaration of Rights of the Massachusetts Constitution, to enjoin the City of Chelsea, Massachusetts, and other city officials, from interfering with the occupancy of 68 Hooper Street, Chelsea, Massachusetts, as a home for recovering alcoholics and drug addicts and to restrain defendants from discriminating on the basis of handicap. The defendants' requirement that an automatic sprinkler system be installed at 68 Hooper Street is intended to prevent the occupancy of the home by recovering alcoholics and addicts, and to treat this house differently from any other single family house in Chelsea.

In bringing this action, plaintiff seeks declaratory, preliminary and permanent injunctive relief to enjoin defendants' conduct, as well as monetary damages, costs and reasonable attorney's fees.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. Section § 3613. Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. § 1367

2.  Venue is proper in the United States District Court for the District of Massachusetts as all acts complained of occurred within this District.

## NATURE OF THE ACTION

3.      This action arises out of defendants' discriminatory treatment of MSHC and its prospective residents, in violation of the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, the Massachusetts Zoning Act, the Equal Protection Clause of the United States Constitution, and the Equal Protection Clause of the Massachusetts Constitution. MSHC seeks to use a house it has purchased at 68 Hooper Street, Chelsea, as a home for ten male veterans of the Armed Services recovering from alcoholism and/or drug addiction. The defendants have blocked this use by applying the Massachusetts General Laws and the State Building Code ("Code") in an arbitrary and discriminatory manner; by refusing to make a reasonable accommodation in its zoning rules, practices, and policies; and by otherwise discriminating against MSHC and its prospective residents on the basis of their handicap. MSHC brings this action to obtain declaratory, monetary and injunctive relief.

## PARTIES

4.      Plaintiff MSHC is a non-profit charitable corporation organized under Mass. Gen. L. c. 180, with its principal place of business at 678 Massachusetts Avenue, Cambridge, MA 02139. Since its incorporation on April 26, 2000, MSHC has endeavored to increase the availability of rental housing in Massachusetts to those individuals who are recovering from alcoholism and/or drug addiction. MSHC accomplishes this mission by purchasing houses in residential neighborhoods throughout Massachusetts to create sober houses where either men or women in early recovery can live together in a safe, affordable, peer supportive environment which allows them to solidify their recovery and become self-sufficient.

5. The sober housing model which MSHC uses exclusively is called Oxford House, a model created in 1975 in Maryland. There are now over 1,000 Oxford Houses nationwide. The first Oxford House in Massachusetts opened in Malden in May, 1989. Oxford House is based on three principles: 1) the house must be democratically operated; 2) the house must be financially self-supporting; and 3) any resident who uses alcohol or drugs must be expelled immediately. Oxford Houses require a sufficient number of residents to create a peer group in which residents provide support for fellow residents in recovery, share house expenses, collectively decide all issues that arise in the house, and participate in the day-to-day upkeep of the house. Additionally, Oxford Houses require a large enough number of residents so that each resident's weekly house share of expenses, i.e. rent, utilities, cleaning supplies, etc., will generate sufficient monthly house income to pay rent to the landlord, in this case MSHC, and to cover house expenses.

6. Defendant City of Chelsea ("City") is a municipal corporation organized and existing according to law with its principal place of business at City Hall, 500 Broadway, Chelsea, MA 02150.

7. Defendant Jay Ash is the duly appointed City Manager of the City.

8. Defendant Joseph Cooney is the duly appointed Director of the Department of Inspectional Services of the City.

9. Joseph Siewko is the duly appointed Fire Chief of the City.

## FACTUAL BACKGROUND

### Mission of MSHC

10.     MSHC purchased its first house in August, 2001 in Hyde Park (Boston), Massachusetts. The house opened on December 5, 2001 as a home for ten women in recovery. As in all Oxford Houses, as residents leave, prospective residents are interviewed and voted in by the house members to fill the vacancies. That house has remained fully occupied since opening and often maintains a waiting list. On October 10, 2002, MSHC purchased its second house at 105 South Street in New Bedford, which opened in January, 2003, as on Oxford House for ten men. On December 4, 2002, MSHC purchased its third house at 1532 Bay Street, Springfield, which opened in February 15, 2003, after extensive renovations, as an Oxford House for eight men. That house was opened in collaboration with the Hampden County Sheriff's Department and serves as a housing option for inmates released from a sober halfway house operated by the Sheriff's Department called "Honor Court." On July 23, 2003, MSHC purchased its fourth house at 1 Westwood Road, Plymouth, which opened in September, 2003 as an Oxford House for ten men. And on October 10, 2003, MSHC purchased its fifth house at 68 Hooper Street, Chelsea, which will be an Oxford House for ten male veterans and will be known as Oxford House-Hooper Street. This house is a collaborative effort with the New England Shelter for Homeless Veterans in Boston where many of the residents will come from. MSHC maintains a website, www.soberhousing.com, to explain the work of the corporation, solicit financial and other support, and provide information about our houses to prospective residents and the general public.

**68 Hooper Street**

11.     After searching for a suitable house for four months, the house at 68 Hooper Street ("the property") was seen and determined to be ideal for the creation of a veteran's Oxford House. MSHC made an offer on the property on July 10, 2003, which was accepted by the seller on July 15, 2003. A purchase and sale agreement was executed on August 6, 2003, with a purchase price of $369,000 and a closing date specified for September 30, 2003. The closing date was subsequently extended, by agreement of the parties, and the property was conveyed to MSHC on October 10, 2003.

12.     On October 10, 2003, MSHC executed promissory notes and mortgages with Wainwright Bank, 63 Franklin Street, Boston, MA in the total amount of $400,000 to purchase and renovate the property. A condition of financing imposed by Wainwright Bank is that HUD funding be received, and that a Certificate of Occupancy be issued by the City of Chelsea, by February 23, 2004. That date has been extended by the bank to April 15, 2004.

13.     The house, which was built in 2001, consists of approximately 2,400 square feet of living area. There are nine bedrooms, two and a half bathrooms, a large modern kitchen, dining room, family room, and computer room/study. Most of the interior of the house has been painted, new carpets have been laid, and the house will largely be furnished with donated furniture.

14.     Renovation of the property, which cost $70,000, was completed on March 30, 2004 and all work was inspected and approved by the City building inspector on that date. **(EXHIBIT A)**

15.     This property, and the house in Plymouth referred to in paragraph 10, were purchased with two $75,000 grants from the Center for Community Recovery Innovations,

6

Inc., a non-profit foundation within the Massachusetts Housing Finance Agency. Additionally, the purchases and renovations of both houses was made possible by a grant awarded to MSHC through the Supportive Housing Program of the U.S. Department of Housing and Urban Development (HUD). That grant, identified as Project Number MA01B216001, provides $200,000 for acquisition and rehabilitation of each house, and $114,500 for administrative support over three years for MSHC.

### Request for Reasonable Accommodation

16.     MSHC hired Myles Curran, General Contractor ("General Contractor"), Woburn, MA to oversee renovations to the property. Within a week of MSHC purchasing the property, the General Contractor submitted an application for a building permit to the Department of Inspectional Services of the City of Chelsea. When no decision was received on said application by the end of October, the president of MSHC, Bruce T. Macdonald, telephoned the Director of the Department of Inspectional Services, Joseph Cooney, in early November to inquire as to status of the building permit. When no return telephone call was received by November 5, Macdonald sent a letter to Cooney, **EXHIBIT B**, in which he stated that Cooney's lack of response was taken as a denial of the building permit based on Cooney's earlier expressed concern that the Oxford House that was proposed was a boarding house and, therefore, did not comply with the zoning classification of the neighborhood. Macdonald reiterated his previous offer to meet with city officials "to explain the Oxford House sober housing model which MSHC uses exclusively, and how the residents of this house are protected by the Fair Housing Act and other statutes." *Id.* The letter also requested that the City "make a reasonable accommodation in rules, policies, practices, or services, [under the

7

Fair Housing Act] because such accommodations may be necessary to afford the prospective residents of 68 Hooper Street equal opportunity to use and enjoy that dwelling." *Id.*

17. On November 18, 2003, a meeting was held between MSHC and City of Chelsea representatives at Chelsea City Hall. Present at the meeting were: Jay Ash, City Manager; Frank Garvin, Police Chief; Cheryl Anne Watson, Corporate Counsel; the City veterans agent; and MSHC president Bruce Macdonald. Macdonald explained the Oxford House model and, in particular, the importance of Oxford Houses being treated as single family houses rather than lodging or rooming houses, and the protections granted to the residents of the house as disabled persons under the federal Fair Housing Act. Macdonald asked that the City grant a reasonable accommodation to allow ten veterans in recovery to reside at 68 Hooper Street as a single family house. After initially expressing concern that MSHC had not informed the city of their intention before they purchased the property, Ash expressed a willingness to work together with MSHC to create this Oxford House for veterans and the meeting ended with an agreement that Macdonald would continue discussions with Atty. Watson with a view toward executing some sort of written memorandum between MSHC and the City. After numerous telephone conferences and faxes between Atty. Watson and Macdonald, a Memorandum of Understanding was agreed to and signed by Ash, Macdonald and Atty. Watson as of December 9, 2003. (**EXHIBIT C**). Upon request by Macdonald to Atty. Watson for confirmation that the Oxford House would comply with Chelsea Zoning Regulations as a single family house, Atty. Watson provided a letter confirming that "with a reasonable accommodation"... the property "complies with the City of Chelsea's Zoning Regulations." (**EXHIBIT D**) The Building Permit was finally issued on December 16, 2003, with a notation at the bottom of the permit that it was "Issued Under Federal Housing Act." (**EXHIBIT E**)

8

18. In spite of the City's agreement to treat Oxford House-Hooper Street as a single family house in the meeting on November 18, in the Memorandum of Understanding dated December 9, and in the letter above-referred to dated December 15, Inspectional Services Director Cooney reneged on the City's agreement by requiring in a letter dated December 18, 2003 (**EXHIBIT F**) that the property have an automatic sprinkler system as purportedly required by: 1) G.L. c. 148, § 26H; and 2) Sec. 904.7 of the State Building Code. By letter dated January 8, 2004 (**EXHIBIT G**) the City professed to abandon reliance on the State Building Code.

19. MSHC filed an appeal of the City's action to the Automatic Sprinkle Appeals Board on January 21 (**EXHIBIT H**) and an amendment to the appeal on January 27, 2004. (**EXHIBIT I**) Even though it did not concede that G.L. c. 148, § 26H required the installation of an automatic sprinkler system at 68 Hooper Street, MSHC requested a reasonable accommodation by letter dated January 27, 2004 (**EXHIBIT J**) in the form of a waiver of any perceived automatic sprinkler system requirement.

20. The City continues to refuse to issue the Certificate of Occupancy, relying on G.L. c. 148, § 26H. (See letter dated April 7, 2004, attached as **EXHIBIT K**). Nine veterans have been accepted as residents in Oxford House-Hooper Street and are waiting to move from the New England Shelter for Homeless Veterans to the house as soon as the Certificate of Occupancy is issued. (See <u>Affidavit of Diane C. Gilbert</u>, **EXHIBIT L**).

## COUNT I
(Violation of Fair Housing Act, 42 U.S.C. § 3602, *et seq.*)

21. Plaintiff repeats and incorporates by reference herein the allegations stated in paragraphs 1 through 20 above.

9

22. The Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, ("FHA"), makes it unlawful:

> [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of... that buyer or renter...[or] a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available.
> *Id.* § 3604(f)(1)

23. As individuals recovering from alcoholism and drug addiction, the prospective residents of Oxford House-Hooper Street are "handicapped" within the meaning of the FHA.

24. "Discrimination," as defined by the FHA, includes "a refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.*, § 3604(f)(3)(B).

25. Defendants are violating plaintiff's rights and the rights of the prospective residents of Oxford House-Hooper Street under the Fair Housing Act and its implementing regulations by:

   a. discriminating against plaintiff and the prospective residents of Oxford House-Hooper Street by denying and otherwise making residency unavailable to them because of their handicap;

   b. applying the City of Chelsea zoning, building and fire codes, and the Massachusetts General Laws, in an arbitrary and capricious manner and thereby denying the prospective residents of Oxford House-Hooper Street their choice of residence within the City of Chelsea;

   c. discriminating against the prospective residents of Oxford House-Hooper Street because of their handicap in the terms, conditions, and privileges of residing at the Oxford House-Hooper Street location and in the provision of services and facilities in connection with that dwelling;

      d.      employing zoning, building and fire codes to segregate and reject the prospective residents of Oxford House-Hooper Street because of their handicap;

      e.      applying building and fire code provisions differently to the prospective residents of Oxford House-Hooper Street, than to other single family residences in the City, because of their handicap;

      f.      coercing, intimidating, threatening, and interfering with plaintiff and the prospective residents of Oxford House-Hooper Street, because of the handicap of said residents, in the exercise and enjoyment of their right to reside at the dwelling of their choice;

      g.      failing to make reasonable accommodation to allow MSHC to establish Oxford House-Hooper Street, a home for recovering alcoholics and addicts, even though the accommodation requested would not cause any undue hardship or fiscal or administrative burdens on the City, and would not undermine the basic purposes of the General Laws or State Building Code.

      h.      be enforcing classifications and other requirements in the General Laws and State Building Code so as to impose a disproportionate burden on individuals recovering from alcoholism and drug addiction.

      26.      As a foreseeable consequence of the City's discriminatory actions and omissions, MSHC has suffered, and will continue to suffer, substantial damages. These damages include: the absence of rental income from the property to pay the mortgage, taxes, insurance and other expenses on the property; the denial of sober housing to former members of the Armed Services who are in recovery from alcoholism and/or drug addiction and are presently residing in a homeless shelter; fees it has been forced to incur for administrative expenses and attorneys; and other expenses associated with MSHC's effort to obtain a certificate of occupancy.

27. In the absence of an injunction ordering that ten residents be allowed to occupy the property without the installation of an automatic sprinkler system, MSHC and the residents of the house will be precluded from establishing a functioning Oxford House and will suffer irreparable harm.

28. The City's conduct violates the FHA.

## COUNT II
**(Violation of the Americans with Disabilities Act, 42 U.S.C., § 12101, *et. seq.*)**

29. Plaintiff repeats and incorporates by reference the allegations stated in paragraphs 1 through 28 above.

30. The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*, § 12132.

31. As persons recovering from alcoholism and drug addiction, the prospective residents of Oxford House-Hooper Street are "qualified individuals[s] with a disability," within the meaning of the ADA. *Id.*, § 12131(2).

32. The actions of the City Manager, the Director of Inspectional Services and Fire Chief are activities, services, or programs of a public entity to which the ADA applies. Under the ADA, the City is required to make "reasonable modifications" in its rules, policies, and practices when necessary to avoid discrimination. *Id.*, § 12131(2).

33. The City has subjected MSHC and the prospective residents of Oxford House-Hooper Street to discrimination by reason of the disability of said residents and has excluded them and has excluded them from the benefit of its services, programs and activities by:

12

a. discriminating against plaintiff and the prospective residents of Oxford House-Hooper Street by denying and otherwise making residency unavailable to them because of their handicap;

b. applying the City of Chelsea zoning, building and fire codes, and the Massachusetts General Laws, in an arbitrary and capricious manner and thereby denying the prospective residents of Oxford House-Hooper Street their choice of residence within the City of Chelsea;

c. discriminating against the prospective residents of Oxford House-Hooper Street because of their handicap in the terms, conditions, and privileges of residing at the Oxford House-Hooper Street location and in the provision of services and facilities in connection with that dwelling;

d. employing zoning, building and fire codes to segregate and reject the prospective residents of Oxford House-Hooper Street because of their handicap;

e. applying building and fire code provisions differently to the prospective residents of Oxford House-Hooper Street, than to other single family residences in the City, because of their handicap;

f. coercing, intimidating, threatening, and interfering with plaintiff and the prospective residents of Oxford House-Hooper Street, because of the handicap of said residents, in the exercise and enjoyment of their right to reside at the dwelling of their choice;

g. failing to make reasonable accommodation to allow MSHC to establish Oxford House-Hooper Street, a home for recovering alcoholics and addicts, even though the accommodation requested would not cause any undue hardship or fiscal or administrative burdens on the City, and would not undermine the basic purposes of the General Laws or State Building Code.

    h.    be enforcing classifications and other requirements in the General Laws and State Building Code so as to impose a disproportionate burden on individuals recovering from alcoholism and drug addiction.

34.    As a foreseeable consequence of the City's discriminatory actions and omissions, MSHC has suffered, and will continue to suffer, substantial damages. These damages include: the absence of rental income from the property to pay the mortgage, taxes, insurance and other expenses on the property; the denial of sober housing to former members of the Armed Services who are in recovery from alcoholism and/or drug addiction and are presently residing in a homeless shelter; fees it has been forced to incur for administrative expenses and attorneys; and other expenses associated with MSHC's effort to obtain a certificate of occupancy.

35.    In the absence of an injunction ordering that ten residents be allowed to occupy the property without the installation of an automatic sprinkler system, MSHC and the residents of the house will be precluded from establishing a functioning Oxford House and will suffer irreparable harm.

36.    The City's conduct violates the ADA.

## COUNT III
### (Violation of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*)

37.    Plaintiff repeats and incorporates by reference herein the allegations stated in paragraphs 1 through 36 above.

38.    The Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., ("Rehabilitation Act"), provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.*, § 794.

39. As individuals recovering from alcoholism and drug addiction, the prospective residents of Oxford House-Hooper Street are disabled individuals within the meaning of the Rehabilitation Act. *Id.*, § 705(20).

40. The City receives Federal financial assistance.

41. The City has denied MSHC and the prospective residents of Oxford House-Hooper Street the benefits of Federal financial assistance and has discriminated against them on the basis of the residents' disability by:

   a. discriminating against plaintiff and the prospective residents of Oxford House-Hooper Street by denying and otherwise making residency unavailable to them because of their handicap;

   b. applying the City of Chelsea zoning, building and fire codes, and the Massachusetts General Laws, in an arbitrary and capricious manner and thereby denying the prospective residents of Oxford House-Hooper Street their choice of residence within the City of Chelsea;

   c. discriminating against the prospective residents of Oxford House-Hooper Street because of their handicap in the terms, conditions, and privileges of residing at the Oxford House-Hooper Street location and in the provision of services and facilities in connection with that dwelling;

   d. employing zoning, building and fire codes to segregate and reject the prospective residents of Oxford House-Hooper Street because of their handicap;

e.   applying building and fire code provisions differently to the prospective residents of Oxford House-Hooper Street, than to other single family residences in the City, because of their handicap;

f.   coercing, intimidating, threatening, and interfering with plaintiff and the prospective residents of Oxford House-Hooper Street, because of the handicap of said residents, in the exercise and enjoyment of their right to reside at the dwelling of their choice;

g.   failing to make reasonable accommodation to allow MSHC to establish Oxford House-Hooper Street, a home for recovering alcoholics and addicts, even though the accommodation requested would not cause any undue hardship or fiscal or administrative burdens on the City, and would not undermine the basic purposes of the General Laws or State Building Code.

h.   be enforcing classifications and other requirements in the General Laws and State Building Code so as to impose a disproportionate burden on individuals recovering from alcoholism and drug addiction.

42.   As a foreseeable consequence of the City's discriminatory actions and omissions, MSHC has suffered, and will continue to suffer, substantial damages. These damages include: the absence of rental income from the property to pay the mortgage, taxes, insurance and other expenses on the property; the denial of sober housing to former members of the Armed Services who are in recovery from alcoholism and/or drug addiction and are presently residing in a homeless shelter; fees it has been forced to incur for administrative expenses and attorneys; and other expenses associated with MSHC's effort to obtain a certificate of occupancy.

43.   In the absence of an injunction ordering that ten residents be allowed to occupy the property without the installation of an automatic sprinkler system, MSHC and the residents

16

of the house will be precluded from establishing a functioning Oxford House and will suffer irreparable harm.

44. The City's conduct violates the Rehabilitation Act.

## COUNT IV
### (Violation of Massachusetts Zoning Act, M.G.L. c. 40A, § 3)

45. Plaintiff repeats and incorporates by reference herein the allegations stated in paragraphs 1 through 44 above.

46. The Massachusetts Zoning Act, Mass. Gen. L. c. 40A ("Zoning Act"), provides that "local land use and health and safety laws, regulations, practices, ordinances, by-laws and decisions of a city or town shall not discriminate against a disabled person." *Id.*, c. 40A, § 3. It further provides:

> Imposition of health and safety laws or land-use requirements
> on congregate living arrangements among non-related persons
> with disabilities that are not imposed on families and groups of
> similar size or other unrelated persons shall constitute discrimination.
> *Id.*

47. The non-discrimination provisions of the Zoning Act "apply to every city or town..." *Id.*

48. As individuals recovering from alcoholism and drug addiction, residents of Oxford House-Hooper Street are "disabled person[s]" within the meaning of the Zoning Act.

49. By its interpretation of the General Laws, the State Building Code, and municipal ordinances and codes, and its enforcement thereof, the City has discriminated against MSHC and the prospective residents of Oxford House-Hooper Street by:

17

      a.    discriminating against plaintiff and the prospective residents of Oxford House-Hooper Street by denying and otherwise making residency unavailable to them because of their handicap;

      b.    applying the City of Chelsea zoning, building and fire codes, and the Massachusetts General Laws, in an arbitrary and capricious manner and thereby denying the prospective residents of Oxford House-Hooper Street their choice of residence within the City of Chelsea;

      c.    discriminating against the prospective residents of Oxford House-Hooper Street because of their handicap in the terms, conditions, and privileges of residing at the Oxford House-Hooper Street location and in the provision of services and facilities in connection with that dwelling;

      d.    employing zoning, building and fire codes to segregate and reject the prospective residents of Oxford House-Hooper Street because of their handicap;

      e.    applying building and fire code provisions differently to the prospective residents of Oxford House-Hooper Street, than to other single family residences in the City, because of their handicap;

      f.    coercing, intimidating, threatening, and interfering with plaintiff and the prospective residents of Oxford House-Hooper Street, because of the handicap of said residents, in the exercise and enjoyment of their right to reside at the dwelling of their choice;

      g.    failing to make reasonable accommodation to allow MSHC to establish Oxford House-Hooper Street, a home for recovering alcoholics and addicts, even though the accommodation requested would not cause any undue hardship or fiscal or administrative burdens on the City, and would not undermine the basic purposes of the General Laws or State Building Code.

    h.    be enforcing classifications and other requirements in the General Laws and State Building Code so as to impose a disproportionate burden on individuals recovering from alcoholism and drug addiction.

50. As a foreseeable consequence of the City's discriminatory actions and omissions, MSHC has suffered, and will continue to suffer, substantial damages. These damages include: the absence of rental income from the property to pay the mortgage, taxes, insurance and other expenses on the property; the denial of sober housing to former members of the Armed Services who are in recovery from alcoholism and/or drug addiction and are presently residing in a homeless shelter; fees it has been forced to incur for administrative expenses and attorneys; and other expenses associated with MSHC's effort to obtain a certificate of occupancy.

51. In the absence of an injunction ordering that ten residents be allowed to occupy the property without the installation of an automatic sprinkler system, MSHC and the residents of the house will be precluded from establishing a functioning Oxford House and will suffer irreparable harm.

52. The City's conduct violates the Zoning Act.

## COUNT V
### (Violation of Equal Protection Clause, United States Constitution)

53. Plaintiff repeats and incorporates by reference herein the allegations stated in paragraphs 1 through 52 above.

54. The City has employed classifications in its interpretation of the General Laws and the State Building Code which discriminate against individuals recovering from alcoholism