UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-10753JLT

MASSACHUSETTS SOBER HOUSING
CORPORATION,

        Plaintiff

v.

CITY OF CHELSEA, JAY ASH, in his capacity as
City Manager of the City of Chelsea, JOSEPH
COONEY, in his capacity as Director of the
Department of Inspectional Services of the City of
Chelsea, and JOSEPH SIEWKO, in his capacity as
Fire Chief of the City of Chelsea,

        Defendants

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S APPLICATION FOR
PRELIMINARY INJUNCTION

I.    INTRODUCTION

Now come the defendants, City of Chelsea, its Fire Chief, Inspectional Services Director and City Manager (collectively, "City"), and hereby oppose the Application for Preliminary Injunction filed by the plaintiff, Massachusetts Sober Housing Corporation ("MSHC").

In its Application, MSHC asks this Court to enjoin the City from requiring the installation of an automatic sprinkler system for a facility that is intended to house ten unrelated veterans, who are recovering substance abusers, as mandated pursuant to G.L. c.148, §26H. Plaintiff was made aware of this requirement in December 2003, but waited until April 13, 2004 to file the instant action. The requirement that the MSHC facility be equipped with an automatic sprinkler system is one imposed by state law—not local ordinance. At the request of MSHC, and as a reasonable accommodation, the City has already waived all local zoning restrictions that would have precluded the use of the plaintiff's property for the purpose of housing ten recovering

substance abusers. The only question here is whether MSHC is entitled to save the minimal expense of ensuring the safety of its residents by ignoring a state statutory requirement that the establishment be equipped with automatic sprinklers.

MSHC argues that the automatic sprinkler requirement violates the Fair Housing Act, 42 U.S.C. §3601, et seq. ("FHA") (Count I); Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") (Count II); Rehabilitation Act, 29 U.S.C. §794, et seq. (Count III); Massachusetts Zoning Act, G.L. c.40A, §3, (Count IV); the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count V); and Article 10 of the Massachusetts Declaration of Rights (Count VI). MSHC further seeks declaratory judgment as to whether it is required to install an automatic sprinkler system pursuant to G.L. c.148, §26H (Count VIII). MSHC seeks damages pursuant to 42 U.S.C. §1983 (Count VII) and injunctive relief (Count IX).[1]

The City submits that MSHC's attempt to enjoin enforcement of this public safety law is motivated solely by a desire to save itself the modest expense of this important (and potentially life-saving) device, and evinces a disturbingly callous disregard for the safety of the individuals MSHC purports to serve. In any event, the City submits that MSHC's Application for Preliminary injunction should be denied because its claims are unlikely to succeed on the merits,

---

[1] Although the plaintiff's Complaint contains all of the counts listed above, the plaintiff, in its Application for Preliminary Injunction, only presses the claims set forth in Counts I (FHA), II (Rehabilitation Act) and VIII (declaration regarding G.L. c.148, §26H) as grounds for the requested injunctive relief. Accordingly, for purposes of the within Opposition to the plaintiff's Application, the defendants respond only to those arguments set forth in the brief submitted by the plaintiff in support of its Application. The defendants note, however, that the plaintiffs remaining claims are predicated upon the federal statutory claims, since the equal protection and due process claims must derive from these statutes relied upon by the plaintiff. Further, the defendants note that the plaintiff's claim under the state Zoning Act (Count III) is barred by virtue of plaintiff's failure to exhaust administrative remedies (see G.L. c.40A, §§ 8, 15, 17; Bonfatti v. Zoning Board of Appeals of Holliston, 48 Mass. App. Ct. 46, 50, __ N.E.2d __ (1999)), and because the provision of the Zoning Act upon which plaintiff relies applies only to local regulations and not to state statutory regulations such as the sprinkler system requirement set forth in G.L. c.148, §26H (see G.L. c.40A, §3(4th par.)).

2

it has failed to demonstrate a threat of a cognizable imminent, irreparable harm, and a balance of the equities and the public interest require denial of the plaintiff's request.

II.    FACTS

MSHC is a charitable corporation that operates rooming houses for recovering substance abusers. See Complaint, ¶4. It operates such houses under a model created by Oxford House, Inc. and outlined in the Oxford House Manual. Complaint, ¶5. On July 10, 2003, MSHC made an offer to purchase a single family dwelling at the Property that it intended to operate as a rooming house for ten unrelated recovering substance abusers. MSHC signed a purchase and sale agreement with respect to the property on August 6, 2003, and completed the purchase of the property on October 10, 2003. Complaint, ¶11. MSHC did not inquire as to what, if any, regulations and ordinances would be applicable to its intended renovations and use of the property until after completing its purchase of the property. Complaint, ¶16.

After discussions between City officials and MSHC representatives, the parties entered into a Memorandum of Understanding ("MOU"), on or about December 9, 2003, in which the City agreed to "grant a reasonable accommodation to Mass Sober Housing as to the parking requirements of single family homes." Complaint, Ex. C, ¶1. The MOU further provides that "[t]his Memorandum of Understanding represents the entire agreement among the City and Mass Sober Housing and supersedes all other terms and conditions of any prior agreements, arrangements, negotiations or representations, written or oral, with respect to the subject matter hereof." Id., ¶8. The City's Corporate Counsel subsequently supplemented this agreement, by letter dated December 15, 2003, in which she stated that the City was accommodating the plaintiff's proposed project by deeming it to comply with the City's Zoning Regulations. Complaint, Ex. D.

On December 18, 2003, the City notified the plaintiff that, prior to issuance of a certificate of occupancy for the structure, the plaintiff would have to install an automatic sprinkler system, pursuant to G.L. c.148, §26H. Complaint, Ex. G. Such a system could have been installed in a matter of, at most, a few weeks at a cost of approximately $15,000.00. Affidavit of Joseph Siewko ("Siewko Aff."), attached hereto as Exhibit 1, ¶10; Affidavit of Joseph Cooney ("Cooney Aff."), attached hereto as Exhibit 2, ¶9. Therefore, had the plaintiff accepted the modest cost of installing this important public safety device, it could have received a certificate of occupancy for the property over three months ago. Cooney Aff., ¶10.

III.   ARGUMENT

   A.   Preliminary Injunction Standard

In order to obtain a preliminary injunction against a public entity's enforcement of an order, regulation or statute, an applicant must show that: (1) there is a substantial probability of success on the merits; (2) the plaintiff will suffer immediate, irreparable harm without injunctive relief pendite lite; (3) the harm the plaintiff will suffer if denied injunctive relief outweighs the harm defendants will suffer if restrained; and (4) the requested injunctive relief would not adversely affect the public interest. Narragansett Indian Tribe v. Gilbert, 934 F.2d 4 (1st Cir. 1991); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984) (emphasis supplied); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980); see also Boston Athletic Assoc. v. Int'l Marathons, Inc., 392 Mass. 356, 362-63 (1984); Brookline v. Goldstein, 388 Mass. 443, 447 (1983); Commonwealth v. County of Suffolk, 383 Mass. 286, 288 (1981); Biotti v. Board of Selectmen of Manchester, 25 Mass. App. Ct. 637 (1988); I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998).

4

B.     <u>MSHC Has Not Demonstrated That It Will Suffer Immediate, Irreparable Harm Without Injunctive Relief Pendite Lite</u>

MSHC has not made any showing whatsoever of irreparable harm if it is required to install a $15,000 sprinkler system before occupying its property. It is well-settled that no irreparable injury exists where "only money is at stake." <u>Floxboro Co.</u> v. <u>Arabian American Oil Co.</u>, 805 F.2d 34, 36-37 (1st Cir. 1986); <u>see also</u> <u>Ross-Simons of Warwick, Inc.</u> v. <u>Baccarat, Inc.</u>, 102 F.3d 12, 19 (1st Cir.1996) (To demonstrate a risk of irreparable harm, a plaintiff must show that it has experienced "a substantial injury that is not accurately measurable or adequately compensable by money damages."). In <u>Giuliano</u> v. <u>Town of Edgartown</u>, 531 F.Supp. 1076 (D. Mass. 1982), plaintiff real estate developers sought a preliminary injunction to a town from enforcing its zoning by-laws. The plaintiffs argued that they would suffer irreparable injuries of lost profits from sales not made, debt interest which would have been retired if sales had gone forward, and cancellations of a development loan for the subject property. This Court (Garrity, J.) held that such financial injuries did not constitute irreparable harm which would warrant the extreme relief of a preliminary injunction. <u>Id.</u> at 1085. The Court held that even <u>foreclosure</u> of the subject properties would not comprise irreparable harm, because those properties were merely investment properties, and not the residence of the plaintiffs. <u>Id.</u> at 1086; <u>see also</u> <u>Floxboro Co.</u> v. <u>Arabian American Oil Co.</u>, 805 F.2d 34, 36-37 (1st Cir. 1986) (no irreparable injury exists where "only money is at stake"). Likewise, in <u>Biotti</u> v. <u>Board of Selectmen of Manchester</u>, 25 Mass. App. Ct. 637, 642 (1988), a plaintiff landowner sought injunctive relief from a decision of the Manchester Board of Appeals, pending adjudication of plaintiff's underlying appeal of that decision. The Massachusetts Appeals Court reversed the trial court's issuance of that injunction, in part, based upon a finding that no irreparable harm existed: "[plaintiff] claims economic loss attributable to the halt in the earth removal activities, the profit

5

from which provides debt service on the investment [plaintiff] has in the parcel of land until it can be developed into income producing office buildings. This problem can be solved more effectively by a speedy resolution of the merits of all the issues involved, at a full trial, rather than by piecemeal litigation."

In this case, the plaintiff has not even <u>alleged</u>, let alone submitted any evidence to demonstrate, that it would suffer any cognizable irreparable harm were it required to install automatic sprinklers in the subject structure. Unlike the unsuccessful plaintiffs in the above-referenced cases, MSHC has not even suggested that it could not afford the minimal expense of installing an automatic sprinkler system. The plaintiff's Application implies that MSHC will be unable to utilize its property for the intended purpose absent injunctive relief. This suggestion is entirely disingenuous. All the City is requiring in order for MSHC to occupy the structure is the installation of a $15,000 automatic sprinkler system, which could have been completed months ago.

It is noteworthy that MSHC has known since <u>December 2003</u>—i.e. for over four months—of the Fire Chief's belief that a sprinkler system is required, yet it waited until now to seek judicial clarification of this issue. At minimal expense, MSHC could have installed a sprinkler system and occupied its building months ago, but instead it has literally chosen to make a federal case out of a dispute over a $15,000 fire-safety device.

Since MSHC has abjectly failed to present a scintilla of evidence that it would suffer irreparable harm, absent the allowance of its request for injunctive relief, its Application for Preliminary Injunction should be denied.

6

C. <u>The Requested Injunctive Relief Would Adversely Affect The Public Interest, And A Balance Of The Equities Weighs Against Allowance Of The Plaintiff's Request</u>

It is well-settled that the public has an overriding interest in effective enforcement of government orders and by-laws. See <u>Commonwealth</u> v. <u>Mass. CRINC</u>, 392, Mass. 79, 89 (1984); <u>Kaplan</u> v. <u>City of Boston</u>, 330 Mass. 381, 384 (1953). MSHC is asking the Court to assist it in flouting a state statute of general applicability, that is designed to protect the public. In <u>Biotti</u> v. <u>Board of Selectmen of Manchester</u>, 25 Mass. App. Ct. 637, 642 (1988), the Appeals Court made clear that a property owner must abide by the order of a local regulatory official <u>unless and until</u> that order is invalidated. Particularly in the case of a fire safety statute such as G.L. c.148, §26H, an injunction barring public officials from enforcing such regulations would clearly be contrary to the public interest.

Here, the plaintiff proposes to have ten unrelated adult males, recovering from substance abuse problems, living in a single-family residence. The City waived all of its own zoning provisions that would have prohibited this arrangement. However, the Fire Chief is of the belief that he is without the authority to waive a provision of state law and, more importantly, that such a waiver would present a grave threat to public safety. <u>Siewko Aff.</u>, ¶¶6-7. As noted by the Fire Chief, the subject property is located at the end of a dead-end road, thereby making access to the property by fire safety personnel difficult. <u>Siewko Aff.</u>, ¶9. Moreover, the property is located in a densely-developed, residential neighborhood. <u>Siewko Aff.</u>, ¶9. The structure itself has nine bedrooms, each of which will have its own locks, of which five are on the second floor, which has only one means of egress to the first floor. <u>Siewko Aff.</u>, ¶9. The concern regarding the safety of this structure is particularly acute in the City of Chelsea, which has had a tragic history of devastating fires, which obliterated more than half of the City. <u>Siewko Aff.</u>, ¶7. Recent

7

events in Coventry, Rhode Island have also demonstrated the importance of strict adherence to fire safety laws.

Although any injunction barring the enforcement of a public safety law or regulation is contrary to the public interest, the instant case presents a particularly dangerous request by the plaintiff. On this basis alone, the plaintiff's Application for Preliminary Injunction should be denied.

### D. MSHC Does Not Have A Substantial Probability Of Success On The Merits

#### 1. The City's Obligations Under the Federal Statutes Do Not Supercede Its Right To Impose A Facially Neutral Public Safety Statute

MSHC does not have a substantial likelihood of success on the merits of its claims pursuant to the FHA, ADA, or Rehabilitation Act because it has not shown that, in this case, its rights under these statutes supercede the City's obligations under G.L. c.148, §26H. The principle of local self-determination and exercise of traditional police powers for the protection of the public must be considered alongside the mandates of the Fair Housing Act, Americans with Disabilities Act and Rehabilitation Act. The obligation of a municipality to modify its policies to give the disabled equal access to housing does not require the municipality to totally disregard its interest in regulating land use. See Bay Area Addiction Research and Treatment Inc. (BAART) v. City of Antioch, 179 F.3d 725, 735 (9th Cir. 1999) (under ADA, "localities remain free to distinguish between land uses to effectuate the public interest," so long as distinctions are not based on inappropriate considerations); Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1106 (3rd Cir. 1996) ("in requiring reasonable accommodation ... Congress surely did not mandate a blanket waiver of all facially neutral zoning policies and rules").

In determining that the plaintiff's proposed use implicates the sprinkler requirement of G.L. c.148, §26H, the Fire Chief and the City clearly have not discriminated against MSHC. To

the contrary, the City waived <u>all</u> of its own zoning use provisions to accommodate the plaintiff's use. The <u>only</u> requirement the City seeks to impose is the statutory requirement that the subject structure be fitted with an automatic sprinkler system—a requirement that could be accomplished at modest cost in a matter of a few weeks. The innocuous statements and comments attributed to the City Manager in the plaintiff's pleadings are not evidence of a discriminatory animus on his part, and certainly cannot be viewed as indicative of any animus on the part of the Fire Chief, whose statutorily-mandated determination it was to require the installation of a sprinkler system. The plaintiff has not alleged a single statement by the Fire Chief that it asserts is evidence of a discriminatory animus of any kind.

Moreover, MSHC has not shown that the denial of its request for this particular accommodation, i.e. being allowed to avoid the modest expense of installing a potentially life-saving fire-safety system, was unreasonable under the circumstances. Under the Fair Housing Act, a municipality need only make <u>reasonable</u> accommodations, "when such accommodations may be <u>necessary</u> to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B) (emphasis supplied). What constitutes a reasonable accommodation is a highly fact-specific inquiry. <u>Hovsons</u>, 89 F.3d at 1103. While the First Circuit has not determined which party carries the burden of proof on this particular issue, the majority of federal circuits, including the Second, Third, Seventh, Eighth, Ninth and Tenth Circuits employ a burden-shifting analysis requiring MSHC to make an initial showing that the requested accommodation is reasonable. See <u>Oconomowoc Residential Programs, Inc. v. City of Milwaukee</u>, 300 F.3d 775 (7th Cir. 2002).

MSHC has made <u>absolutely no attempt at all</u> to demonstrate that waiver of the sprinkler requirement is "necessary" for the proposed use. Rather, it has simply stated in conclusory

9

fashion that, "[t]he accommodation requested by MSHC was entirely reasonable – to allow ten men to reside at 68 Hooper Street, a single family house, without the necessity of an automatic sprinkler system." MSHC has submitted no evidence as to why it would be unreasonable or unfeasible for it to comply with the automatic sprinkler requirement of G.L. c.148, §26H. In stark contrast, the City has demonstrated that the sprinkler system could have been installed in a matter of a few weeks, and at modest cost, thereby permitting occupancy of the plaintiff's property over three months ago. Cooney Aff., ¶¶9-10. In light of this evidence, it is patently absurd for the plaintiff to argue that waiver of this important public safety requirement is "necessary" for its proposed use.

MSHC fares no better under the reasonable accommodation requirements of the ADA and Rehabilitation Act. An accommodation is reasonable "if it ...does not undermine the basic purpose that the zoning ordinance seeks to achieve." Oxford House, Inc. v. Town of Babylon, 819 F.Supp. 1179, 1185 (E.D.N.Y.1993). Here, the clear purpose underlying G.L. c.148, §26H is to promote public safety by requiring the installation of sprinkler systems under certain circumstances. This compelling government purpose would be seriously undermined by the allowance of the injunction sought by the plaintiff and could have deadly results. The City's interest in preventing the danger posed by the plaintiff's request is all the more compelling, where the plaintiff has failed to make any showing whatsoever that compliance with the sprinkler requirement is "necessary" to permit its proposed use.

Since the so-called "accommodation" sought by the MSHC is neither "necessary" nor "reasonable" and, indeed, comprises no more than a callous attempt by the plaintiff to save the modest expense of installing a sprinkler system, at the expense of the safety of the prospective residents of its facility, the plaintiff's Application for Preliminary Injunction should be denied.

2. <u>MSHC Does Not Have A Substantial Likelihood Of Success On Its Claim That The Fire Chief's Determination, Under G.L. c.148, §26H, Was Improper (Count VIII)</u>

MSHC's argument regarding G.L. c.148, §26H must fail because: (1) MSHC's appeal of the Fire Chief's determination is still pending before the state Automatic Sprinkler Appeals Board, and this Court should therefore abstain, under <u>Railroad Commission of Texas</u> v. <u>Pullman, Co.</u>, 312 U.S. 496 (1941), from reviewing the plaintiff's claim under G.L. c.148, §26H; and (2) MSHC's claim that it is not subject to the provisions of G.L. c.148, §26H is baseless, since the statute's applicability is facially apparent in this instance. .

a. <u>This Court Should Abstain From Making A Declaration Regarding G.L. c.148, §26H, Because The Question Is Currently Pending Before The Massachusetts Automatic Sprinkler Appeals Board</u>

First, this Court should abstain from adjudicating the plaintiff's contention that the sprinkler requirement set forth in G.L. c.148, §26H is inapplicable to its proposed use, in light of the pendency of plaintiff's appeal to the state Automatic Sprinkler Appeals Board. Pursuant to G.L. c. 148, §26H:

> Whoever is aggrieved by the head of the fire department's interpretation, order, requirement or direction under the provisions of this section, may within forty-five days after the service of notice thereof, appeal from such interpretation, order or requirement to the board of appeals of the fire safety commission as provided in section two hundred and one of chapter six.

Plaintiff has availed itself of this remedy. Specifically, the plaintiff has appealed the Fire Chief's determination to the state Automatic Sprinkler Appeals Board, which held a hearing on the plaintiff's appeal on April 14, 2004. <u>Siewko Aff.</u>, ¶10. The City submits that the plaintiff's initial attempt to serve its Complaint in this matter <u>on that very date</u>—after having waited four months without seeking judicial intervention—is suspect.

In any event, the state Automatic Sprinkler Appeals Board has not yet issued its decision on the plaintiff's appeal, and the plaintiff should not be permitted simply to circumvent this administrative avenue of appeal by filing a new court action within days of the administrative hearing. The defendants submit that the pendency of this proceeding before a state administrative agency, whose decision itself would be appealable under G.L. c.30A, warrants abstention by this Court. See, e.g., Harris County Comm'rs Court v. Moore, 420 U.S. 77, 83, 95 S.Ct. 870 (1975) ("Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, [the Supreme Court has] regularly ordered abstention."); Ford Motor Co. v. Meredith Motor Co., Inc., 257 F.3d 67, 71-72 (1st Cir. 2001); Bath Mem'l Hosp. v. Me. Health Care Fin. Com'n, 853 F.2d 1007, 1016 (1st Cir.1988) ("Pullman-type abstention ... may be appropriate ... because ... plaintiffs are making identical claims in two state court suits, and the state courts may resolve the claims in ways that would moot, or significantly affect, the claims plaintiffs make here"); Santasucci v. Gallen, 607 F.2d 527, 529 (1st Cir. 1979) (pendency of proceeding in state court warranted abstention by federal court).

Since there is no reported decision of any state court addressing the applicability of G.L. c.148, §26H under these circumstances, and since there has already been a hearing in a parallel state administrative proceeding between the parties regarding this very question, this Court should abstain from making a declaration under Count VIII of the plaintiff's complaint, and should likewise decline to address this ground for the plaintiff's Application for Preliminary Injunction.

### b. Plaintiff's Claim That It Is Not Subject To G.L. c.148, §26H Is Without Merit

Plaintiff is simply incorrect in its assertion that the sprinkler requirement set forth in G.L. c.148, §26H does not apply to it. The statute is clear on its face in its requirement that sprinklers be installed for any "house where lodgings are let to six or more persons not within the second degree of kindred." The plaintiff's facility is to be occupied by ten unrelated, adult men, who will each pay a monthly rent for their lodgings. It is nonsensical for the plaintiff to argue that its facility does not meet the definition of G.L. c.148, §26H. It should be noted that the very (unreported) case relied upon by the plaintiff and attached to its Application as Exhibit B, Sanvo v. City of Boston, itself makes the distinction between the rental of an apartment (as in that case) and the letting of separate rooms (or lodgings) to separate individuals (as in this case). Plaintiff's Exhibit B, p.8.

The Massachusetts Attorney General has opined that statutes requiring the installation of sprinkler systems should be construed to effectuate "the primary purpose..., which is, quite clearly, to protect the public from the hazards of fires." Opinion of the Attorney General, June 16, 1988 (attached hereto as Exhibit 3).[2] Broadly interpreting exceptions to sprinkler requirements, or artificially narrowing the scope of the requirements themselves, "would undercut th[is] primary purpose." Id. The plaintiff does not dispute that it will be letting rooms on a monthly basis to ten unrelated adults. This use clearly triggers the sprinkler installation requirement set forth in G.L. c.148, §26H. Accordingly, the plaintiff's Application for Preliminary Injunction should be denied for this additional reason.

---

[2] The referenced Opinion related to the statutory requirement that sprinklers be installed in high-rise residential buildings and the scope of an exception to that requirement for buildings converted to condominiums prior to a specific date. However, the Attorney General's reasoning is equally applicable here. Indeed, the Attorney General specifically referenced the requirements of G.L. c.148, §26H, in footnote 4 of his Opinion.

13

## IV. CONCLUSION

WHEREFORE, the defendants respectfully request that this Court deny the plaintiff's Application for Preliminary Injunction.

DEFENDANTS

By their attorneys,

*[signature]*

Joseph L. Tehan, Jr. (BBO #494020)
Jonathan M. Silverstein (BBO# 630431)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

220167.2/metr/0555

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 5/4/04

*[signature]*